DOMENGEAUX, Chief Judge.
Marie and J.W. Thompson filed suit for injuries sustained when Mrs. Thompson tripped and fell over a 4V2 inch step leading to a raised display area in the Brown’s Discount Furniture Store of Alexandria. After a trial, the jury returned a verdict finding Brown’s 70% at fault and Mrs. Thompson 30% at fault. The jury found Mrs. Thompson sustained total damages of $28,432.10 and failed to award any damages for Mr. Thompson’s loss of consortium claim. The Thompsons appeal, assigning as errors the assessment of any fault to Mrs. Thompson, the inadequacy of the damages awarded, and the failure to award any damages for loss of consortium. The plaintiffs also allege as error the trial court’s failure to grant a JNOV on these three issues. For the following reasons, we affirm.
COMPARATIVE FAULT
On December 28, 1989, Mr. and Mrs. J.W. Thompson, accompanied by their son, their grandson, and a friend, went to Brown’s Furniture Store to buy some bedding for their camp in Toledo Bend. A Brown’s salesman, Carlton Arvie, greeted them at the door and informed them that the merchandise they wished to see was on the second floor. Mr. Arvie then led them through what he considered to be the most direct route to the escalator, this path requiring the group to cross a raised island display area. As the group approached the raised area, Mr. Arvie and Mr. J.W. Thompson were in front and Mrs. Thompson was *172 two or three feet behind them, with the other members of the group behind Mrs. Thompson. Although the two men in front successfully negotiated the step up, Mrs. Thompson did not. She tripped over the step and fell with a twisting motion, scraping her knees and landing on her right side.
Photographs taken two months after the accident show the step to be about 4½ inches high with beige carpeting covering both levels. The photographs depict the step marked with red tape along the top and bottom levels, although the tape is worn off and peeling in some places. The witnesses for the plaintiffs testified that the tape was not there on the day of the accident or that they did not remember seeing it that day. Mr. Arvie, the salesman, and David Small, an assistant manager, testified that the tape was in place on the day of the accident.
Michael Frenzel, a safety consultant hired by the plaintiffs, testified that the step was unreasonably dangerous. The same color carpet on both levels made the step difficult to notice as did the cluttering of furniture near the step. Without the red tape, which was worn in some places, Mr. Frenzel testified that the step would have been virtually disguised. He also cited several safety and insurance manuals which listed raised or sunken display areas as undesirable conditions because of the tripping hazards they created.
Mrs. Thompson testified that she just ran into something “like a brick wall.” She did not see the two men in front of her step up, nor did she see any tape on the step. On cross examination, she admitted that she was not distracted by merchandise or advertisements as she approached the step. She stated that she simply did not see the step.
La.R.S. 9:2800.6 imposes a duty on a merchant to keep his premises free of any hazardous conditions which might reasonably give rise to damage. Under the version of the statute in effect on the date of Mrs. Thompson’s accident, once a plaintiff proved that the accident was caused by a hazardous condition, the burden then shifted to the defendant to prove that he acted in a reasonably prudent manner. The defendants have not appealed nor answered the plaintiffs’ appeal; hence, the jury’s finding of fault on the part of Brown’s is not before us. The question presented for review is whether the jury’s assessment of 30% comparative fault to Mrs. Thompson is manifestly erroneous.
In Hutchinson v. Wal-Mart, Inc., 573 So.2d 1148 (La.App. 1st Cir.1990), the First Circuit held that the trial court erred in granting a JNOV to reduce the jury’s assessment of 35% fault to the plaintiff. In that case, the plaintiff tripped over a six inch high display pallet as she stepped backwards while looking at merchandise on the shelves. The court stated:
In reaching this conclusion, we are mindful of the jurisprudence to the effect that a customer in the display area of a retail store has a diminished duty to maintain a lookout because of the intentional distractions created by the displayed merchandise. Nevertheless, the customer still has a duty to exercise appropriate care for his own protection and cannot be oblivious to hazards observable with the exercise of reasonable care. See, Kimble v. Wal-Mart Stores, Inc., 539 So.2d 1212 (La.1989); Lloyd v. TG & Y Stores Co., 556 So.2d 629 (La.App. 2d Cir.1990); Ritchie v. S.S. Kresge Co., Inc., 505 So.2d 831 (La.App. 2d Cir.), writ denied, 507 So.2d 227 (1987).
573 So.2d at 1151.
In the instant case, Mrs. Thompson was not distracted by the displayed merchandise. Although the lack of color contrast between the two floor levels may have disguised the step, the jury was presented with evidence that the step was marked with red tape. It was within the jury’s province to accept or reject this evidence. Mrs. Thompson did not see the two men directly in front of her step up nor did she see the step. We can find no error in the jury’s allocation of comparative fault.
QUANTUM
At about 8:30 p.m. on the date of the accident at Brown’s, Mrs. Thompson was taken to the emergency room at Rapides *173 General Hospital where she was treated and released for pain in her neck, shoulders, back and knees. On January 2, 1990, she was seen by Dr. William McBride. An examination revealed normal range of motion, with tenderness and soreness in the back muscles of the neck, and x-rays revealed degenerative arthritis of the cervical spine. Although Mrs. Thompson denied any weakness in the extremities, Dr. McBride noted a subtle decreased pin prick response. He diagnosed muscle strain, with deep contusions to the neck, shoulder and arm. He then referred her to a neurologist, Dr. Riad Hajmurad.
Dr. Hajmurad performed several diagnostic tests which revealed such abnormalities as a possible nerve root irritation, degenerative disc disease and a minimal bulge at L4-5. Even with these findings, Dr. Hajmurad believed that Mrs. Thompson was suffering from mechanical back pain of the muscles and ligaments, as opposed to nerve pain. He did not consider her to be a candidate for surgery, believing physical therapy and medication to be the most appropriate treatment.
Mrs. Thompson was also treated by Dr. John Patton, a neurosurgeon. He diagnosed her condition as an aggravation of her pre-existing, multilevel degenerative disc disease, with her present pain being triggered by the accident at Brown’s. He too, however, did not believe that surgery was an appropriate treatment. Rather, he suggested a program with medication, lum-bosacral support, weight reduction and limitation of activities. He noted that her condition was not incapacitating. He did not assign a disability rating nor did he testify as to how long he expected her complaints to persist.
Dr. John Clifford, another neurosurgeon, examined Mrs. Thompson at the request of the defendants. Dr. Clifford believed that Mrs. Thompson’s complaints were not rooted in pathology. His examination produced marked inconsistencies which led him to believe that Mrs. Thompson was more convinced that she was suffering as opposed to actually experiencing any pain. He did not believe she was a candidate for surgery.
Mrs. Thompson’s award was itemized as follows:
1. Past medical expenses $12,932.10
2. Future medical expenses 3,500.00
3. Past physical pain and suffering 2,000.00
4. Future physical pain and suffering 2,000.00
5. Past mental suffering 2,000.00
6. Future mental suffering 2,000.00
7. Past disability 2,000.00
8. Future disability 2,000.00
Total: $28,432.10
Dr. Patton’s testimony provided objective corroboration for plaintiff’s claim that her pre-existing arthritis was aggravated by the accident at Brown’s. However, the severity of Mrs. Thompson’s pain, as well as its duration, is a question of fact, requiring a credibility determination by the trier of fact. Dr. Clifford testified that he found no objective findings to substantiate Mrs. Thompson’s complaints and that his examination yielded inconsistent results. Although Dr. Patton did not believe Mrs. Thompson was feigning her complaints, he, too, noted inconsistent test results.
In Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3d Cir.1989), this court affirmed a lump sum award of $30,-000, which presumably included $12,400 in medical expenses, for the aggravation of a pre-existing neck condition caused by a slip and fall accident. In the instant case, the itemized jury award included all of Mrs. Thompson’s medical expenses of $12,-932.10, plus $3,500 in future medicals and general damages totalling $12,000. Although the general damage award is on the low side, we cannot say it is an abuse of discretion.
LOSS OF CONSORTIUM
The Thompsons also assign as error the jury’s failure to award any damages to Mr. Thompson for his loss of consortium claim. Mr. Thompson testified that he and his wife no longer participated in activities that they both enjoyed, such as gardening, *174 and that the frequency of their sexual relations decreased since the accident. However, Mr. Thompson also testified that he had been in two accidents and had undergone a cervical fusion during the time that Mrs. Thompson was being treated for her injuries. The jury could have reasonably concluded that any detrimental changes in the couple’s married life were caused by Mr. Thompson’s injuries and surgery. We find no error in the jury’s denial of this claim.
JNOV
In Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986), the Supreme Court set out the standard to be used in considering a judgment notwithstanding the verdict:
When there is a jury, the jury is the trier of fact. LSA-C.C.P. art. 1736.
The rules governing a motion for judgment notwithstanding the verdict are found in LSA-C.C.P. art. 1811. The article does not specify the grounds on which the trial judge may set aside a jury verdict. The Official Revision Comments state that "... a judgment N.O.V. is based on a different standard [from addi-tur and remittitur] — namely, that based on the evidence there is no genuine issue of fact. Thus where the trial court is convinced that, under the evidence, reasonable minds could not differ as to the amount of damages [or as to liability], it should have the authority to grant the appropriate judgment notwithstanding the verdict.” (Footnotes omitted.)
496 So.2d at 293.
In the instant case, we find the court did not err in denying the plaintiffs’ a JNOV on the three issues discussed above. On the question of liability, the jury was presented with evidence that Mrs. Thompson was not distracted by merchandise, yet she failed to see the step or the two men in front of her negotiate the step. See Hutchinson, supra, where the First Circuit reversed a JNOV and reinstated the jury’s finding of fault on the part of a plaintiff who failed to see an observable hazard. On the question of damages, the jury heard testimony from Mrs. Thompson’s treating physician that some of her complaints could not be explained. See Brossette v. Professional Transportation, 562 So.2d 1018 (La.App. 3d Cir.1990), where this court reversed a JNOV increasing the damages for a plaintiff with similar complaints as Mrs. Thompson’s. On the question of loss of consortium, the jury was presented with evidence that any disruption in the Thomp-sons’ marital life could have been caused by Mr. Thompson’s injuries and surgery. The evidence, on the whole, is not so overwhelmingly in favor of the plaintiffs that reasonable men could not have reached different conclusions on these three questions. The trial court did not err in denying the JNOV.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiffs-appellants, Marie and J.W. Thompson.
AFFIRMED.