# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1083

**JOSHUA GODCHAUX, ET UX.**

**VERSUS**

**PEERLESS INSURANCE COMPANY, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 11-C-1647-C
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX
CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, J. David Painter, Shannon J. Gremillion, and John E. Conery, Judges.

**Gremillion, J., concurs in part, dissents in part, and assigns written reasons.**

**Conery, J., concurs in part, dissents in part, and assigns reasons.**

**REVERSED IN PART AND AMENDED IN PART.**

Gregory John Laborde
P. O. Box 3667
Lafayette, LA 70502
Telephone: (337) 234-7000
COUNSEL FOR:
    Defendant/Appellee – Brian Campbell

Terry Bennett Loup
Roderick A. James
Morris Bart, LLC
909 Poydras Street – Suite 2000
New Orleans, LA 70112
Telephone: (504) 599-3254
COUNSEL FOR:
    Plaintiffs/Appellants – Joshua Godchaux and Anna Godchaux

**Patrick Craig Morrow, Sr.**
**Morrow, Morrow, Ryan & Bassett**
**P. O. Drawer 1787**
**Opelousas, LA 70571-1787**
**Telephone:  (337) 948-4483**
**COUNSEL FOR:**
     **Defendant/Appellee – Brian Campbell**

**Larry Lane Roy**
**Preis & Roy**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**Telephone:  (337) 237-6062**
**COUNSEL FOR:**
     **Defendant/Appellee – Gilchrist Construction Co.**

**David Thomas Butler, Jr.**
**Funderburk & Butler**
**1111 South Foster Drive – Suite G**
**Baton Rouge, LA 70806**
**Telephone:  (225) 924-1000**
**COUNSEL FOR:**
     **Defendant/Appellee – Brian Campbell**

**Michael M. Thompson**
**Law Offices of Keith S. Giardina**
**9100 Bluebonnet Centre Boulevard – Suite 300**
**Baton Rouge, LA 70809**
**Telephone:  (225) 293-7272**
**COUNSEL FOR:**
     **Defendants/Appellees – Brian Campbell, Moody Price, LLC, and**
     **Peerless Insurance Company**

**THIBODEAUX, Chief Judge.**

Debris from a flipping truck struck the vehicle of an on-duty deputy for the St. Landry Parish Sheriff's Office. The deputy and his wife brought suit against the driver, his employer and its insurer, alleging that the crash caused severe injuries to the deputy's back. At trial, the defendants presented the testimony of Dr. Charles Bain, an alleged biomechanics and causation analysis expert, who testified that the low-impact accident did not cause the deputy's injuries. At the conclusion of the trial, the jury found the defendants liable and awarded the deputy $236,165.00 in past medical expenses, $82,665.00 in past lost wages, $100,000.00 in future medical expenses, and $100,000.00 for pain and suffering. The jury further awarded $3,000.00 in loss of consortium damages to the deputy's wife. The deputy and his wife now appeal the judgment of the trial court, alleging that the court improperly admitted Dr. Bain's testimony as it did not meet the *Daubert* standards for admissibility. Furthermore, they argue that the jury erred in failing to provide sufficient damage awards for future medical expenses, future lost wages and lost earning capacity, pain and suffering, loss of enjoyment of life, and loss of consortium. For the following reasons, we reverse the judgment of the trial court regarding the admission of Dr. Bain's testimony and amend the jury's quantum award.

I.

**ISSUES**

We shall consider:

(1)　whether the trial court erred by admitting Dr. Bain's testimony as a biomechanics and causation analysis expert;

(2)     whether the jury erred by only awarding plaintiffs $100,000.00 for future medical expenses;

(3)     whether the jury erred by failing to award plaintiffs any damages for future lost wages or earning capacity;

(4)     whether the jury erred by failing to award plaintiffs any damages for loss of enjoyment of life;

(5)     whether the jury erred by only awarding plaintiffs $100,000.00 for pain and suffering; and

(6)     whether the jury erred by only awarding plaintiffs $3,000.00 for loss of consortium, services, and society.

II.

## FACTS AND PROCEDURAL HISTORY

On November 24, 2010, Brian Campbell, an employee of Moody & Price, L.L.C. acting in the course and scope of his employment, was driving northbound on Interstate-49 when he lost control of his truck and flipped, causing the truck to cross the median towards southbound traffic. As a result of the crash, pieces of the headache rack on Mr. Campbell's truck flew off and struck a Chevrolet Tahoe driven by Joshua Godchaux, an on-duty deputy for St. Landry Parish Sheriff's Office. Mr. Godchaux was struck by broken glass in the head and neck, and was taken to the emergency room where he was treated and released.

A week later, Mr. Godchaux visited Dr. Craig Matherne, complaining that he suffered from neck pain and headaches. Then, two weeks after the accident, Mr. Godchaux complained of low-back pain. Dr. Matherne ordered an MRI, which showed evidence of herniation and bulging discs. Dr. Matherne then recommended that Mr. Godchaux visit Dr. William Brennan, a neurosurgeon, for treatment. Dr. Brennan initially treated Mr. Godchaux with steroid injections and

2

pain medication, but when Mr. Godchaux began showing symptoms of foot drop and his legs giving out, Dr. Brennan performed surgery.

After surgery, Mr. Godchaux continued to experience low-back pain. After injections failed to provide relief, he visited Dr. Michael Haydel, who implanted a temporary spinal cord stimulator. When this course of action proved to be effective in alleviating his pain, Dr. Haydel referred Mr. Godchaux to Dr. Alan Appley, who implanted a permanent spinal cord stimulator.

Since he was unable to return to his job as deputy because of his injuries, Mr. Godchaux accepted a lower-paying clerical position at Atchafalaya Measurements in June 2012. The Sheriff's Office offered him a light-duty position in August 2012, but Mr. Godchaux rejected the position.

Mr. Godchaux, and his wife, Anna Godchaux, filed suit against Mr. Campbell, Moody & Price, and its insurer, Peerless Insurance Company, seeking damages for the injuries caused by the auto accident. During discovery, the defendants identified Dr. Charles Bain as an expert witness in biomechanics and injury causation analysis. The plaintiffs filed a motion in limine to exclude Dr. Bain's testimony on the grounds that he did not qualify as an expert and his methods were unreliable. The trial court rejected the motion and allowed Dr. Bain to testify at trial.

III.

**STANDARD OF REVIEW**

Official Comment (d) of La.Code Evid. 702 states that "[b]road discretion should be accorded the trial judge in his determination as to whether expert testimony should be held admissible and who should or should not be permitted to testify as an expert." As such, a trial court's decision to admit or

3

exclude expert testimony is subject to an abuse of discretion standard of review. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167 (1999); *State v. Craig*, 95-2499 (La. 5/20/97), 699 So.2d 865, *cert. denied*, 522 U.S. 935, 118 S.Ct. 343 (1997). If the appellate court finds that the evidence was improperly admitted, it may conduct a de novo review only if the improperly admitted evidence prevented the jury from making a fair and impartial determination of a disputed fact. *See Brewer v. J.B. Hunt Transport, Inc.*, 09-1408 (La. 3/16/10), 35 So.3d 230.

IV.

## LAW AND DISCUSSION

### *Admissibility of Dr. Bain's Testimony*

Mr. and Mrs. Godchaux argue that the trial court erred in admitting Dr. Bain's testimony since he did not qualify as an expert in biomechanics and causation analysis and his opinions and analytical methods were unreliable. While Dr. Bain likely qualifies as an expert in biomechanics, we agree that his testimony should have been excluded as his methods were unreliable and his testimony does not assist the jury in determining any material facts.

Louisiana Code of Evidence Article 702 states that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Considering Article 702 follows the Federal Rules of Evidence,[1] we must consider the Supreme Court's guidance in *Daubert v. Merrell*

---

[1]Official Comment (b) of the La.Code Evid. art. 702 states that "[t]his article follows Federal Rule of Evidence 702."

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786 (1993), where the Court reasoned that trial courts perform a necessary gate-keeping function by deciding whether expert testimony is reliable and relevant. The *Daubert* Court further reasoned that trial courts should consider the following factors when admitting expert testimony: 1) "whether [the expert's theory or technique] can be (and has been tested)[;]" 2) "whether the theory or technique has been subjected to peer review and publication[;]" 3) whether the theories are subject to "standards controlling the technique's operation," with particular consideration of "the known or potential rate of error[;]" and 4) whether the theory or technique is generally accepted in the scientific community. *Id.* at 593-94.

Noting that the *Daubert* analysis did not directly consider an expert's qualifications, the Louisiana Supreme Court adopted the United States Eleventh Circuit Court of Appeal's three-part inquiry from *City of Tuscaloosa v. Hacros Chem., Inc.*, 158 F.3d 548 (11th Cir. 1998), *cert. denied*, 528 U.S. 812, 128 S.Ct. 309 (1999) "to [provide] more comprehensive guidance to district courts determining admissibility of expert testimony[.]" *Cheairs*, 861 So.2d at 542. Under the Eleventh Circuit's three-prong test, expert testimony is proper only if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d at 562.

Applying the three-prong test, we must first consider whether Dr. Bain is qualified to testify as an expert in biomechanics and causation analysis.

Mr. and Mrs. Godchaux argue that Dr. Bain is not a qualified expert in biomechanics and causation analysis since he has not practiced medicine in ten years, has never treated a patient in the United States, is not board certified in neurosurgery or orthopedics, has never taken undergraduate courses in biomechanics or accident reconstruction, and has never conducted on-site accident investigations. In rebuttal, the defendants argue that Dr. Bain is an expert considering he has an undergraduate degree in engineering, is a licensed physician, has completed a three-week program in accident reconstruction, has produced numerous causation reports, and has co-authored numerous papers in biomechanics.

The Louisiana Supreme Court has held that "experience alone is normally sufficient to qualify a witness as an expert[,]" and "the fact that a witness does not have a college degree does not disqualify him from testifying[.]" *Cheairs*, 861 So.2d 542 (citing *Manchak v. Willamette Industries, Inc.*, 621 So.2d 649 (La.App. 2 Cir.), *writ denied*, 629 So.2d 1170 (La.1993)). Notably, this burden is fairly low, as the supreme court does not require extensive experience or a particular type of experience; rather, the supreme court only requires that the expert have experience in the subject matter. This low burden is further supported by Article 702 as an expert need only have "knowledge, skill, experience, training, *or* education. La.Code Evid. art. 702 (emphasis added). The use of the word "or" in the article implies that an expert need only have one of these traits to be qualified.

Here, Dr. Bain possessed experience in the fields of biomechanics and causation analysis, given he was a physician and an engineer, and he participated

in an accident reconstruction program. Furthermore, he produced numerous papers on biomechanics and accident reconstruction. While he did not major in biomechanics or become board certified in neurosurgery or orthopedics, the lack of a college degree and certification are not automatic grounds for disqualification. As experience alone is sufficient to qualify a witness as an expert, Dr. Bain satisfies the first-prong of the expert-testimony analysis.

We now must consider whether Dr. Bain's methodology for reaching his conclusions on causation were sufficiently reliable to satisfy a *Daubert* analysis. Specifically, we must determine whether Dr. Bain's methods were testable, subject to peer review, have a known rate of error, and are generally accepted by the community.

In reaching his opinions regarding causation, Dr. Bain reviewed the accident report, live video of the accident, images from the Tahoe, repair estimates, depositions, and medical records. He also conducted a comparative analysis of force applied to a Lexus automobile in order to determine the level of force in the accident involving the Tahoe. However, he never spoke to Mr. Godchaux, never contacted any of the treating physicians, never visited the scene of the accident, never inspected the Tahoe personally or talked with the damage appraiser, and did not know the body position of the plaintiff at the time of impact. Furthermore, Dr. Bain did not consider the angle of impact or the dimensions of the headache rack in any calculations.

In assessing his methodology, Dr. Bain has not proven that his conclusions are reliable. While our court has held that an expert need not perform an independent investigation of the accident as such determinations focus on

credibility of testimony and not admissibility,[2] the record does not contain any evidence regarding whether his means of data collection, mathematical process, or comparative Lexus study have been peer reviewed or accepted in the communities of biomechanics and accident reconstruction. Considering Dr. Bain did not even re-create the actual accident in reaching his conclusions and only relied on a crash analysis of a different make and model to assess the force asserted on the Tahoe, his findings are inherently suspect without evidence of support from the scientific community. Even if we assume his comparative methods are reliable, Dr. Bain never testified as to the reliability or potential errors in the initial Lexus crash analysis, so the comparative data is also inherently suspect. While not all experts are created equal and may often be assessed on credibility grounds, *Daubert* and its progeny still mandate unsubstantiated methodology that is patently unsound be stricken to protect the sanctity of the fact finding process. *See Ryan v. Zurich Am. Ins. Co.*, 07-2312 (La. 7/1/08), 988 So.2d 214. As Dr. Bain failed to show how any of his findings conform to accepted scientific principles in line with *Daubert*, his methodology is inherently unreliable and should have been excluded.

Even if Dr. Bain's methodology were reliable, his testimony still should have been excluded as it does not assist the jury in determining a fact in issue. Dr. Bain's testimony involves a discussion of whether the force of impact in this accident could have caused the injury to Mr. Godchaux. Specifically, Dr. Bain testified that the force of impact to the Tahoe, given the little amount of damage to the vehicle, was too slight to cause injuries to Mr. Godchaux's back. However, this court in *Davis v. Martel*, 00-1727, p. 7 (La.App. 3 Cir. 7/18/01), 790 So.2d

---

[2]*See Taylor v. Progressive Sec. Ins. Co.*, 09-791 (La.App. 3 Cir, 4/7/10), 33 So.3d 1081, *writ denied*, 10-1024 (La. 9/17/10), 45 So.3d 1044.

767, 772, *writ denied*, 01-2399 (La. 11/21/01), 801 So.2d 1087, adopted the reasoning of the second circuit in concluding that force-of-impact testimony cannot be used to prove the extent of injuries:

> [Plaintiff] argues the trial court erred in concluding, "the impact to which the plaintiff's vehicle was subjected to could not have resulted in any injury to her." To accept such premise, the trial court essentially is holding that a low estimate of property damage equals minimal impact and therefore minimal injuries or no injuries. The [Louisiana] Second Circuit Court of Appeal in *Seegers v. State Farm Mutual Auto. Ins. Co.,* 188 So.2d 166, 167 (La.App. 2 Cir.1966), persuasively held:
>
> > It is strenuously urged that the force of impact was so slight it could not have caused the injuries of the nature and extent complained of by the plaintiff, Ms. Seegers. This argument, in part is based upon the evidence and the record to reflect that the only damage to the rear of the Seegers' automobile was the breaking of the tail pipe bracket and a small dent in the rear bumper requiring a cost of repairs of only $448.88. While it is indisputable [*sic*] true that the impact as [*sic*] slight, we think it would be dangerous precedent to attempt to measure the degree of injuries in direct proportion to the force of the collision. The testimony of both the medical expert and the lay witnesses established the fact that Ms. Seegers did sustain some injuries and the minimal force of the collision is, therefore, of no material importance.

Since our circuit does not accept force-of-impact testimony to prove causation, the majority of Dr. Bain's testimony was prejudicial as it could lead the jury to reach improper conclusions of fact.[3] As such, the testimony does not satisfy the third

---

[3]While we recognize that the first circuit in *Fussell v. Roadrunner Towing and Recovery, Inc.* 99-194 (La.App. 1 Cir. 3/31/00), 765 So.2d 373, *writ denied*, 00-1264 (La. 6/23/00), 765 So.2d 1042, held that force-of-impact testimony may be used to prove causation of injuries, we are not bound by the opinions of other state courts of appeal. *See In re Quick*, 97-1143, p. 13, n. 17 (La. 12/12/97), 705 So.2d 172, 181.

prong of the Eleventh Circuit's test and should have been excluded.[4] As such, we conclude that the trial court abused its discretion in admitting the testimony into evidence.

## De Novo Review of Liability

As Dr. Bain's testimony was used for purposes of deciding the essential issue of causation, we conclude that its admission potentially prejudiced the jury leading to an inconsistent jury award, and thus, de novo review is warranted. *See Brewer*, 35 So.3d 230. Considering the evidence in the record without Dr. Bain's testimony, there is no dispute that Mr. Campbell was negligent in driving his truck which led to the accident with Mr. Godchaux. The only real question is whether the accident caused Mr. Godchaux's back injuries. We believe it did. While the defendants have pointed to medical records indicating that Mr. Godchaux suffered from pre-existing back pain, this pain did not necessitate multiple surgeries and the inability to work as a deputy police officer. It was only after the accident that significant medical treatment was needed, which indicates that the accident at the very least aggravated the injury. Moreover, the doctors who cared for Mr. Godchaux all testified that this accident likely caused the injuries. As such, we find the defendants liable on the merits.

## De Novo Review of Quantum

---

[4] In admitting Dr. Bain's testimony, the trial court relied extensively on *Taylor v. Progressive Sec. Ins. Co.*, 09-791 (La.App. 3 Cir, 4/7/10), 33 So.3d 1081, *writ denied*, 10-1024 (La. 9/17/10), 45 So.3d 1044 where this court upheld the admission of a chiropractor's testimony regarding the chiropractic treatment and biomechanics of low-speed crashes. However, this reliance is unfounded. While *Taylor* stands for the proposition that an expert can testify to the biomechanics in low-speed crashes, it does not hold that an expert can discuss the *extent* to which certain levels of force actually cause injury. Given the amount of variables in such a determination, this is a small but necessary distinction to avoid a dangerous evidentiary precedent. *See also Davis*, 790 So.2d 767.

**Future Lost Wages and Lost Earning Capacity**

Mr. Godchaux alleges that the jury erred in failing to award any damages for future lost wages and earning capacity. We disagree. Our court in *Batiste v. New Hampshire*, 94-1467, pp. 3-4 (La.App. 3 Cir. 5/3/95), 657 So.2d 168, 170, *writ denied*, 95-1413 (La. 9/22/95), 660 So.2d 472, has provided guidance on assessing this area of quantum:

> Loss of earning capacity is not the same as lost wages. Rather, earning capacity refers to a person's potential. Earning capacity is not necessarily determined by actual loss. While the plaintiff's earnings at the time of the accident may be relevant, such figures are not necessarily indicative of his past or future lost earning capacity. The plaintiff need not be working or even in a certain profession to recover this type of award. What is being compensated is the plaintiff's lost ability to earn a certain amount, and he may recover such damages even though he may never have seen fit to take advantage of that capacity. *Hobgood v. Aucoin*, 574 So.2d 344 (La.1990).

> In determining whether a personal injury plaintiff is entitled to recover for the loss of earning capacity, the trial court should consider whether and how much plaintiff's current condition disadvantages him in the work force. The trial court should thus ask itself what plaintiff might be able to have earned but for his injuries and what he may now earn given his resulting condition. *Finnie v. Vallee*, 620 So.2d 897 (La.App. 4 Cir.), *writ denied*, 625 So.2d 1040 (La.1993).

> The very nature of lost earning capacity makes it impossible to measure the loss with any kind of mathematical certainty. The facts of each case must take into account a variety of factors, including the plaintiff's condition prior to the accident, his work record prior to and after the accident, his previous earnings, the likelihood of his ability to earn a certain amount but for the accident, the amount of work life remaining, inflation, and the plaintiff's employment opportunities before and after the accident. *Finnie*, 620 So.2d at 901.

Here, Mr. Godchaux argues that his future earning capacity was diminished as he was forced to take a clerical position at Atchafalaya Measurements which paid less than the St. Landry Parish Sheriff's office. However, this argument fails to consider that Mr. Godchaux turned down a light-duty position in the Sheriff's office that carried with it the possibility for advancement. Furthermore, in regards to his position at Atchafalaya Measurements, Mr. Godchaux testified that he felt he could occupy the role of manager tomorrow. While neither of these situations amount to certainties, the fact that there is a potential to earn as much income as he did prior to the accident indicates that there is no lost earning capacity. As such, Mr. Godchaux is not entitled to an award for future lost wages[5] and earning capacity.

**Future Medical Expenses**

Mr. Godchaux contends that the jury erred in only awarding $100,000.00 in future medical expenses. We agree. Awards for future medical expenses constitute special damages which can be established with some degree of mathematical certainty. *Thibeaux v. Trotter*, 04-482 (La.App. 3 Cir. 9/29/04), 883 So.2d 1128, *writ denied*, 04-2692 (La. 2/18/05), 896 So.2d 31. At trial, Dr. Haydel testified that Mr. Godchaux would need to attend doctor visits for his injuries every two to three months which would amount to a cost of $600.00 to $900.00 per year. Mr. Godchaux also presented evidence that for every $1,000.00 of annual costs,

---

[5]We recognize that awards for future lost wages are different than those for lost earning capacity, and that Mr. Godchaux testified that the light-duty position paid less than his previous position. However, Mr. Godchaux presented no evidence as to the difference in pay between his previous position and the light-duty position offered. Given that Mr. Godchaux chose to turn down this light-duty position, we believe this difference in pay is necessary evidence to accurately assess lost future wages, as we have no way of determining if the wage offered was greater or less than that offered by his current position at Atchafalaya. As Mr. Godchaux has failed to present sufficient evidence to accurately assess lost wages, he is not entitled to the award.

the lifetime future expenses would amount to $72,569.00. The defendants have presented no evidence to contradict these values. As $600.00 is 60% of $1,000.00, we reason that Mr. Godchaux's future medical expenses for doctor visits would be at least 60% of $72,569.00, which is $43,541.00. In addition, Mr. Godchaux presented uncontradicted evidence that the lifetime cost of spinal stimulator replacements would amount to $199,292.00. Given these values, we find that Mr. Godchaux's award for future medical expenses should be increased from $100,000.00 to $242,833.00.

**Loss of Enjoyment of Life and Pain and Suffering**

Mr. Godchaux argues that the jury erred in failing to award any damages for loss of enjoyment of life and in awarding only $100,000.00 for pain and suffering. We agree.

Loss of enjoyment of life is a component of general damages that compensates for "detrimental alterations of a person's life or lifestyle or a person's inability to participate in the activities or pleasures of life that were formally enjoyed." *McGee v. A C and S, Inc.*, 05-1036 (La. 7/10/06), 933 So.2d 770. Here, it is clear that Mr. Godchaux has suffered detrimental alterations to his lifestyle as a result of his injuries. He suffers from continued pain, fatigue, and can no longer participate in many social activities he loves, such as hunting and fishing. Furthermore, his marriage and sex life have suffered greatly. Finally, he was forced to give up his career as an on-duty police officer. In *Clement v. Citron*, 13-63 (La.App. 3 Cir. 6/19/13), 115 So.3d 1260, we awarded $30,000.00 for loss of enjoyment of life to a woman who suffered severe back injuries and could no longer participate in household chores or enjoy numerous social activities she

loved. As we feel the strains on Mr. Godchaux's life are even greater than in *Clement* given his passion for his career, we award $50,000.00 for loss of enjoyment of life.

As for pain and suffering awards, "a court must consider the severity and duration of the injured party's pain and suffering" in making its assessment. For example, in *Melancon v. Lafayette Ins. Co.*, 05-762 (La.App. 3 Cir. 3/29/06), 926 So.2d 693, *writ denied*, 06-974 (La. 6/16/06), 929 So.2d 1291, this court upheld a general damages award of $550,000.00 for a patient who suffered a disc injury requiring a laminectomy. That patient suffered permanent nerve damage, sexual dysfunction, depression, and continued neuropathic pain down his right leg. Although recommended, that patient also had not received a spinal stimulator to relieve the pain. While Mr. Godchaux's injuries are certainly similar to those suffered by the patient in *Melancon* given the numerous surgeries (including a laminectomy) and the continued chronic pain, they were not as severe as Mr. Godchaux did not suffer from sexual dysfunction or neuropathic pain or any diagnosed depression. In addition, Mr. Godchaux's pain has been relieved to a certain extent given the spinal stimulator. Still, we feel an award of only $100,000.00 is inadequate given the duration and scope of Mr. Godchaux's pain. We, therefore, increase his award for pain and suffering to $150,000.00.

**Loss of Consortium**

Mrs. Godchaux argues that the jury erred in only awarding $3,000.00 for loss of consortium. Again, we agree. Our court has previously reasoned that "[l]oss of consortium is more than just a loss of general overall happiness, it also includes love and affection, society and companionship, sexual relations, the right

14

of performance of material services, the right of support, aid, and assistance, and felicity." *Bellard v. S. Cent. Bell Tel. Co.*, 96–1426, p. 21 (La.App. 3 Cir. 8/27/97), 702 So.2d 695, 707 (citations omitted), *writ denied*, 97-2415 (La. 12/12/97), 704 So.2d 1202. Here, Mrs. Godchaux has suffered greatly as a result of Mr. Godchaux's injury, as her sex life is virtually nonexistent, she sleeps in a separate bed, Mr. Godchaux cannot help with daily chores, and he is withdrawn and depressed. Consequently, we find that the loss of consortium award should be increased to $20,000.00.

V.

## CONCLUSION

For the foregoing reasons, we reverse the trial court's admission of Dr. Bain's testimony into evidence as Dr. Bain's testimony was not scientifically valid and was unreliable. We further amend the quantum award by increasing the award for future medical expenses to $242,833.00, increasing the award for pain and suffering to $150,000.00, increasing the award for loss of enjoyment of life to $50,000.00, and increasing the award for loss of consortium to $20,000.00. Costs of this appeal are assessed against the defendants.

**REVERSED IN PART AND AMENDED IN PART.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 13-1083

### JOSHUA GODCHAUX, ET UX

### vs.

### PEERLESS INSURANCE COMPANY, ET AL.

**Gremillion, J., concurs in part and dissents in part.**

The first major question that the majority needed to answer was whether the jury should have heard the testimony of Dr. Charles Bane. I agree with my colleagues; they should not have heard it.

Secondly, I break with my fellow dissenter, Judge Conery, and agree with the majority, that Dr. Bane's testimony prevented the jury from making a fair and impartial determination. Thus, the majority has correctly concluded that a de novo review is necessary.

Finally, I agree with the conclusions of the majority's de novo review of liability. The subject accident did cause injury resulting in damages to Mr. Godchaux.

I turn from the majority de novo's review of liability to its de novo review of damages. The majority reviewed both the special damages awarded by the jury (those damages susceptible to exact mathematical calculation), as well as the general damages (those damages not susceptible to exact mathematical calculation).

With regard to the special damages, I agree with the majority. Mr. Godchaux simply did not prove entitlement to either future lost wages or lost earning capacity. Furthermore, with regard to future medical expenses, I think the

majority's $142,833.00 increase to the jury's award is extremely generous. Nevertheless, it does represent a fair and reasonable review of the record.

I disagree, however, with the manner in which the majority exploded the general damages. I, therefore, dissent.

My review of the record suggests that the jury was wise and certain when it awarded $100,000.00 in general damages. In fact, I agree with Judge Conery on this point. The jury's award was "generous."

The fact that the jury chose to award a nice, round, even number on the verdict form's blank entitled "Pain and Suffering" does not make the award infirm. It does not make it "inconsistent."

The fact that a verdict form has multiple blanks all purporting to award general damages, does not require a jury to multiply its intended award exponentially just to avoid leaving a few blanks.

In this case, the jury was sympathetic to the plaintiff in some areas, but was skeptical in others. That is what juries do, and that is what we want them to do. However, the majority's review of this record completely excludes all possibility of skepticism. In fact, it removes the need for a jury altogether. It replaces the jury with a calculator.

My de novo review establishes that $100,000.00 for all general damages was appropriate. Likewise, it establishes that the $3,000.00 for loss of consortium was appropriate. I would increase the plaintiff's recovery in the area of future medicals from $100,000.00 to $242,833.00, as did the majority. In all other respects, I would affirm the jury's various awards, and leave them unchanged.

Thus, I concur in part and dissent in part.

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

JOSHUA GODCHAUX, ET UX.

VERSUS

PEERLESS INSURANCE COMPANY, ET AL.

**Conery, J., concurs in part and dissents in part.**

I agree with the majority's ultimate holding that the testimony of Dr. Bain should have been excluded. I would exclude his testimony based on a finding that the defendants have not established that there is an accepted field of expertise in "causation analysis." While Dr. Bain *may* have been qualified as an expert in "biomechanics" and "accident reconstruction," the record before us does not support that he performed any tests, examined the specific vehicles, or performed or reviewed any "crash tests" specific to this case. I agree that Dr. Bain's opinion should have been excluded on that basis.

I disagree with the majority's analysis that the exclusion of Dr. Bain's testimony required a de novo review of the jury verdict. I do not find that "the improperly admitted evidence prevented the jury from making a fair and impartial determination of a disputed fact." *See Brewer v. J.B. Hunt Transport, Inc.*, 09-1408 (La. 3/16/10), 35 So.3d 230.

The major thrust of Dr. Bain's testimony was that the impact was so slight that it could not have caused injury to Mr. Godchaux's lumbar spine. The dash cam video on Mr. Godchaux's vehicle was reviewed by the jury, thus enabling the jury to see the relatively minor nature of this "collision." Evidence as to minimal

property damage further supports the conclusion that this was a minor impact collision. The jury heard medical evidence that the collision aggravated a pre-existing back condition. The jury award reflects that the jury discredited Dr. Bain's testimony, as the jury did award all the past medical expenses totaling $236,150.00 for the plaintiff's lumbar surgery and treatment. The jury also awarded $100,000.00 in future medical expenses, $82,665.00 in past lost wages, $100,000.00 in pain and suffering, and $3,000.00 in loss of consortium to Mrs. Godchaux, for a total amount of $521,830.00 in damages. The jury award, in my view, was quite generous for aggravation of a pre-existing back condition from a minor impact collision, especially where the record demonstrates credibility problems with the plaintiff's testimony.

There was ample evidence in the record that plaintiff had failed to report a long history of prior back complaints to his medical providers. The dash cam video shows no significant displacement of Mr. Godchaux's vehicle. Mr. Godchaux was easily able to pull to the side of the road without further incident.

Mr. Godchaux's trial testimony that he ducked and bent his torso to the right was impeached by his deposition testimony that he blacked out and couldn't remember what happened to him. He first reported to his doctors that he was "in a head on collision," implying a far more serious event than that "caught on tape."

At trial, Mr. Godchaux claimed that his primary injury was to his lumbar spine, yet he did not complain of low back pain when he visited the emergency room or to various physicians he consulted during the two week period following the accident.

Dr. Brennan was first consulted for complaints of low back pain on December 20, 2010, nearly one month after the accident. Mr. Godchaux did not

inform Dr. Brennan of his long history of low back complaints.

At trial, the jury heard evidence and testimony that Mr. Godchaux suffered from low back pain for many years and had documented complaints of low back pain as late as two weeks before the accident in 2010. He was treated for low back pain in 2008, and in 2009, he was treated for low back pain that radiated into his right leg, the same complaints he gave to Dr. Brennan. Most importantly, as to credibility, the jury heard testimony that Mr. Godchaux failed to disclose these prior back problems to his medical providers. Dr. Brennan performed surgery on Mr. Godchaux only after Mr. Godchaux claimed that he fell when his leg gave out on January 3, 2011.

The majority's decision to substitute its judgment for that of the jury and award money for specific elements of damages that the jury refused to award, increase specific damage awards and affirm other specific awards made by the jury clearly exemplifies why courts of appeal should not attempt to micromanage jury verdicts. The jury heard all the evidence, and, based on the record, could just as easily have found that Mr. Godchaux's pre-existing low back injury was not aggravated to the extent that the accident caused his surgical treatment or loss of earnings and other damages. Instead, it awarded *all* of his past medical expenses, $100,000.00 for future medical expenses, $100,000.00 in general damages, all of his past loss of earnings, as well as $3,000.00 for Mrs. Godchaux's loss of consortium. The majority *increased* the damages by $259,833.00 for a total damage award of $781,663.00.

In light of the minor nature of this collision and the impeachment of Mr. Godchaux before the jury, I find that the jury's award, though generous, is not an abuse of its vast discretion. Damage awards are factual findings by a jury. Under

the facts and circumstances of this case, great deference must be given to the jury's factual findings. *See Guillory v. Saucier*, 11-745 (La.App. 3 Cir. 12/7/11), 79 So.3d 1188, *writ denied*, 12-75 (La. 3/9/12), 84 So.3d 554, *and writ denied*, 12-81 (La. 3/9/12), 84 So.3d 555. I would affirm the jury's award in its entirety.