GAIDRY, J.
|2In this suit for injuries arising out of an automobile accident, the plaintiffs appeal a trial court judgment in favor of the defendant. We affirm.
FACTS AND PROCEDURAL HISTORY
This suit arises from an automobile accident which occurred on August 7, 2002 in which James Wilson made a left turn into the path of an oncoming car, causing a collision from which he sustained serious injuries. Mr. Wilson and his wife, Brenda, filed this suit against the Louisiana Department of Transportation and Development (“DOTD”), alleging that DOTD was negligent in the installation of lane delinea-tors on Essen Lane in the area of the 1-10 overpass because those lane delineators blocked motorists’ view of oncoming traffic, and that DOTD’s negligence caused his accident.
After a trial, the jury returned a verdict in favor of DOTD, finding that DOTD was not negligent or its negligence did not cause the accident. Mr. Wilson filed a motion for JNOV or for new trial, which was denied by the court. Mr. Wilson then filed the instant devolutive appeal, asserting that the jury’s conclusion that DOTD was not negligent was not supported by the evidence, that the court erred in permitting the defendant to introduce the affidavit of Chris Marchiafava into evidence, and that the court erred in allowing the DOTD’s expert, Mike James, Jr., to testify regarding facts of which he had no personal knowledge.
DISCUSSION
In their first assignment of error, the Wilsons allege that the jury’s finding that DOTD was not negligent or that their negligence did not cause the accident was not supported by the evidence and thus was manifestly erroneous.
|oA determination of negligence or fault is a factual determination. In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, through Dep’t of Transp. & Dev., 617 So.2d 880, 882 (La.1993). Further, when factual findings are based upon determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact’s findings. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
The basis for the Wilsons’ claim that DOTD was negligent was that the lane *37 delineators, as installed,[1] blocked the view from the southbound left turn lane of the headlights[2] of vehicles travelling northbound on Essen Lane, causing him to pull out in front of Barbara White’s oncoming vehicle. DOTD alleged that it was not negligent in installing the lane delineators, that they did not block drivers’ view of oncoming traffic, and alternatively that on the night of the accident, Mr. Wilson’s view of Ms. White’s oncoming vehicle was more likely blocked by the presence of several cars in the northbound left turn lane.
Mr. Wilson testified that prior to the accident, he pulled into the southbound left turn lane to enter the interstate and stopped at the red light. He did not recall there being any cars in the northbound left turn lane. When |4his light turned green, he proceeded to make a permitted left turn (he did not have a green arrow) in order to get onto the interstate. Although Mr. Wilson has no recollection of the accident itself or of events for some time thereafter, he testified that he did not see any oncoming traffic or headlights before the accident. He did not know if the delineators alongside the northbound left turn lane blocked his view of Ms. White’s headlights, but he believes they did because it is the only explanation for the accident; he testified that he would not have turned in front of an oncoming car if he could see it.
Michael Gauthier, one of the Baton Rouge Police officers who investigated the accident, testified at trial that he did not issue a citation to Mr. Wilson for the accident because it was within his discretion to do so and he did not want to “add insult to injury” by issuing a citation to an injured party, and also because he believed that a vision obscurement by the lane delineators caused the accident. He testified that although the accident report, signed by him, says that Mr. Wilson failed to yield and that there was no vision obscurement, that part of the accident report was completed by another officer on the scene. He testified that he had investigated similar accidents at that same location where he was told by the drivers that they could not see the oncoming vehicle before the collision, and he had spoken to his supervisors at some time about his belief that this intersection was unsafe.
Olin Dart, a traffic engineer and accident reconstructionist, provided expert testimony at trial as to what effect the lane delineators would have on the visibility from the southbound left turn lane of headlights of oncoming vehicles in the northbound lanes. He testified that Ms. White’s headlights were about ten inches below the top of the delineators. Furthermore, | .¡although the delineators were spaced 32 inches apart, it was his opinion that because of Mr. Wilson’s viewing angle from his position in the southbound left turn lane, it was also impossible for him to see Ms. White’s headlights through the delineators. Mr. Dart acknowledged on cross-examination that there was nothing in the Manual on Uniform Traffic Control Devices which recommends against lane delineators. Furthermore, he acknowledged that if there were cars in the northbound left turn lane, the cars would have obstructed Mr. Wilson’s view of Ms. White’s oncoming car, regardless of the presence of the lane delineators.
*38 Ingolf Portenheimer, chief traffic engineer for the City of Baton Rouge-Parish of East Baton Rouge, testified that given traffic patterns, he believed that it was unlikely that there were several cars in the northbound left turn lane at the time of the accident.
Ms. White, the driver of the other car involved in the accident, testified that the lane delineators were not so high that she could not see over them and that they did not block her view of the other lanes. She testified that she saw headlights coming towards her as she approached the intersection, although she could not know for certain if the headlights she saw were from Mr. Wilson’s vehicle or from other vehicles traveling southbound on Essen, and she assumed that any cars in the southbound left turn lane would yield since she had a green light. The first time she specifically saw Mr. Wilson’s car was when he pulled out in front of her and she hit him.
Chris Marchiafava witnessed the accident while stopped at the red light on the interstate exit ramp. He testified at trial that Ms. White had the green light and Mr. Wilson turned in front of her. As soon as the accident happened, Mr. Mar-chiafava looked to make sure he could drive into the ^intersection safely, and then he pulled into the intersection to check on the drivers of the cars involved in the accident. He testified that there were several cars in the northbound left turn lane when he looked immediately after the accident before pulling into the intersection. Although he did not recall mentioning the presence of these vehicles to the officers investigating the accident, he testified as to their presence in his affidavits in 2006 and at trial. Although he was not certain exactly how many cars were present in the northbound turn lane at the time of the collision, as opposed to cars piling up after the wreck happened, he testified that he was certain that some of them were there at the time of the wreck because he remembered seeing them and avoiding them when he pulled into the intersection immediately following the collision.
DOTD’s expert in accident reconstruction, Mike James, Jr., testified that although Mr. Wilson could not have seen the headlights on Ms. White’s vehicle, he could have seen the light shining through the lane delineators and could also have seen the light shining above the delineators. Alternatively, if there were in fact cars in the northbound left turn lane, those cars would have blocked Mr. Wilson’s view of the lane delineators themselves, as well as Ms. White’s headlights.
After trial, the jury answered the question on the verdict form, “Do you find State of Louisiana, through the Department of Transportation and Development, was negligent, and that negligence caused or contributed to the automobile accident?” by checking “NO.” After a careful review of the evidence contained in the record, we cannot say that a reasonable factual basis for the jury’s finding that DOTD was not negligent does not exist in the record, nor can we say that the jury was clearly wrong in so finding. The jury was faced with conflicting views of the evidence regarding whether a |7person sitting in a vehicle in the southbound left turn lane could see the headlights of cars in the northbound lanes, and clearly chose to believe the testimony that either Mr. Wilson’s view was not obstructed or was obstructed by cars in the northbound left turn lane. A factfinder’s choice between two conflicting views of the evidence cannot be clearly wrong. This assignment of error is without merit.
In their second assignment of error, the Wilsons argue that the court erred in permitting the introduction, over the objection of the plaintiffs, of Chris Mar- *39 chiafava’s affidavits regarding the presence of cars in the northbound left turn lane. However, the plaintiffs did not contemporaneously object to the introduction of the affidavits. To preserve an eviden-tiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. See Etcher v. Neumann, 00-2282, p. 13 (La.App. 1 Cir. 12/28/01), 806 So.2d 826, 838, writ denied, 02-0905 (La.5/31/02), 817 So.2d 105. Since plaintiffs failed to contemporaneously object to the admission of Mr. Marchiafava’s affidavit, they waived the right to contest it on appeal. La. C.E. art. 103. This assignment of error is without merit.
In their final assignment of error, the Wilsons allege that the court erred in allowing DOTD’s expert in accident reconstruction, Mike James, Jr., to testify regarding facts of which he had no personal knowledge. The Wilsons argue that by “gratuitously drawing vehicles in the turn lane on his scaled drawing, and testifying from the drawing, Mr. James was essentially leading the jury to believe that there were in fact vehicles present in the turn lane opposite of Mr. Wilson at the time of the accident.” The plaintiffs mischaraeterize Mr. James’s testimony in this argument. Whether or not |8there were vehicles in the northbound left turn lane at the time of the accident was a contested issue. Mr. James gave an opinion as to whether Mr. Wilson’s vision was obstructed in two different situations — one with cars present in the northbound left turn lane, and one with no cars present in the northbound left turn lane. This testimony created no confusion for the jury, and the assignment of error is without merit.
CONCLUSION
As we have found all of appellants’ assignments of error lacking in merit, the judgment appealed from is affirmed. Costs of this appeal are assessed to plaintiffs-appellants, James and Brenda Wilson.
AFFIRMED.

. On the date of the accident, Essen Lane in Baton Rouge had lane delineators installed along the left turn lanes in both directions at the I-10 entrance. Mr. Wilson’s suit alleges that the lane delineators alongside the northbound left turn lane blocked his view from the southbound left turn lane of the headlights of cars travelling in the northbound lanes.

. The accident occurred after dark.