GARRETT, J.
_JjThe plaintiff, Michael W. Pratt, appeals from a jury verdict and judgment rejecting his personal injury claims arising out of a rear-end auto accident. The plaintiff argues that the trial court made several evi-dentiary errors that denied him a fair trial. He urges that the verdict and judgment must be vacated and that this court should render a judgment for damages in his favor. For the following reasons, we affirm.
FACTS
On July 20, 2010, Pratt, in a 2005 Chrysler sedan, was stopped at a red light on Desiard Street in Monroe. The defendant, Brett O. Culpepper, in a 2005 Nissan Pathfinder, was stopped behind him. Culpep-per was distracted by some paperwork in his car and noticed that the traffic around him was beginning to move. He began to move and then realized that Pratt was still stopped in front of him. Culpepper applied his brakes, but his vehicle struck Pratt’s vehicle from behind. According to Culpepper, the damage to both vehicles was slight. Culpepper claimed that Pratt said at the scene that he was. not injured. The police officer investigating the accident, Dwayne Crowder, was an experienced traffic investigator. He stated that Pratt denied being hurt or injured and said at the scene there was no need for medical attention.
In July 2011, Pratt filed suit against Culpepper and his insurer, State Farm Mutual Automobile Insurance Company, and Oakley Medical LLC, Culpepper’s company, alleging that Culpepper was completely at fault in causing the accident.[1] Pratt alleged in his petition that his vehicle was |2struck from behind by Cul-pepper’s vehicle “with tremendous force.” At trial, he described it as a “solid hit.” Pratt claimed that he suffered significant injuries to his back, head, and neck. Pratt was treated by Dr. Dan A. Holt, a chiropractor, and Dr. Vincent R. Forte of Louisiana Pain Care. He claimed that his back injuries necessitated radiofrequency lumbar medial branch neurotomies at four levels of his lumbar spine. He also claimed his injuries required him to undergo left and right lumbar medial branch blocks at four levels of his lumbar spine. He sought damages for past and future loss of enjoyment of life, inconvenience, embarrassment, past and future pain and suffering, mental anguish, emotional distress, medical expenses, loss of household services, loss of earnings, loss of earning capacity, disability, physical impairment, lost vacation time, lost fringe benefits, prescription costs, medical related expenses, and all noneconomic damages.[2]
*619 The defendants answered and disputed Pratt’s version of the event. They asserted that Culpepper’s vehicle merely “bumped” into the rear of Pratt’s vehicle, and because the impact was so minimal, it could not have caused the extensive injuries claimed by Pratt. Partial summary judgment was granted by the trial court in February 2012, finding that Culpepper was the cause of the accident and that State Farm provided coverage. The judgment expressly reserved the defendants’ right to inquire into causation |sand/or damages. Another motion for partial summary judgment by Pratt, claiming that the accident caused his neck and back injuries, was denied.
The parties filed numerous pretrial motions in limine which were ruled upon prior to trial and in the context in which they were presented at the time they were argued. These motions were considered by one judge of the Fourth Judicial District Court. A jury trial began in July 2013, but the trial was upset before the jury was sworn due to the unexpected illness of one of the attorneys. The second jury trial, held in February 2014, was presided over by a different judge from that district.[3]
The jury found that Pratt failed to prove' by a preponderance of the evidence that the accident caused him to suffer physical injuries. Judgment was rendered in favor of the defendants, dismissing- Pratt’s claims. Pratt filed motions for judgment notwithstanding the verdict and for new trial, which were denied. The plaintiff now appeals.
Before we discuss the evidentiary issues raised on appeal, we note that this litigation has been very contentious with myriad motions and objections filed by both sides. We have conducted an exhaustive review of the voluminous record and exhibits. Both lower court judges who presided over the protracted proceedings exhibited a great amount of patience, legal acumen, and a desire to be fair to both sides. In addition to the matters complained of on appeal by Pratt, the record is replete with numerous rulings which were adverse to the defense. These are not before us on appeal. Many of the alleged errors complained of by Pratt were actually the |4result of some rather unusual trial strategies employed by Pratt’s counsel. Pratt’s argument on appeal that he was denied his right to a fair trial and that the jury verdict must be vacated is simply not borne out by this record.
I. IMPEACHMENT OF DR. HOLT
Pratt argues on appeal that the trial court erred in allowing documentation, testimony, and counsel argument concerning a dispute in the 1990s between Dr. Holt and the Louisiana State Board of Chiropractic Examiners (“LSBCE”) to be admitted into the record before the jury.
Dr. Holt became Pratt’s treating chiropractor after the accident. His treatment of Pratt began on August 2, 2010. Dr. Holt had been suspended by the LSBCE in 1997, allegedly for overtreatment of Medicaid patients. In September 2012, Pratt filed a motion in limine seeking to prohibit the defendants from using any statement or reference about any disciplinary action taken against Dr. Holt by the LSBCE, or any consent judgment entered into by Dr. Holt regarding a plea of nolo contendere to the administrative charges, citing La. C.E. art. 410(A)(2).
Culpepper argued this information was relevant under the circumstances of this *620 case, which presented a low-impact accident with high medical expenses. Further, some issues pertaining to the relationship between Pratt’s attorney and some of the medical care providers in this case, which included discounts provided for high-volume liability payers and/or agreements to forgo payment for medical services until the conclusion of a patient’s lawsuit, also arose. Culpepper contended that Dr. Holt’s license was suspended for Medicaid billing fraud and for overtreatment of patients | ¿and this information was relevant to Dr. Holt’s credibility as a witness who would testify about his treatment, billing procedures, and practices in this case.
Pratt’s motion in limine was denied. The trial court observed that Pratt was involved in a low-impact accident and claimed high medical expenses, some of which were billed by Dr. Holt. The trial court found that the jury needed to hear the facts and make a determination whether the care given was appropriate. Therefore, Dr. Holt’s credibility and qualifications as an expert would be essential issues at trial. The trial court found that the nolo contendere rule did not apply here because the plea was entered in an administrative proceeding, not a court proceeding.
Pratt filed an emergency motion to reconsider the denial which was rejected by the trial court. Pratt then filed a writ application with this court which was denied on January 8, 2018, on the showing made. On the day that the trial on the ■ merits began, Pratt reurged the motion in limine. The trial court refused to recon-' sider the motion, stating that nothing had changed; it adopted the prior judge’s ruling on the motion.
Legal Principles
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is Rnot relevant- is not admissible. La. C.E. art. 402. Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
La. C.E. art. 410(A)(2) states:
A.General rule. Except as otherwise provided in this Article, evidence of the following is not, in any civil or criminal proceeding, admissible against the party who made the plea or was a participant in the plea discussions:
(2) In a civil case, a plea of nolo conten-dere[.]
La. C.E. art. 607 states:
A. Who may attack credibility. The credibility of a witness may be attacked by any party, including the party calling him.
B. Time for attacking and supporting credibility. The credibility of a witness may not be attacked until the witness has been sworn, and the credibility of a witness may not be supported unless it has been attacked. However, a party may question any witness as to his relationship to the parties, interest in the lawsuit, or capacity to perceive or to recollect.
C. Attacking credibility intrinsically. Except as otherwise provided by legislation, a party, to attack the credibility of a witness, may examine him concerning any matter having a reasonable tenden *621 cy to disprove the truthfulness or accuracy of his testimony.
D. Attacking credibility extrinsically. Except as otherwise provided by legislation:
(1) Extrinsic evidence to show a witness’ bias, interest, corruption, or defect of capacity is admissible to attack the credibility of the witness.
(2) Other extrinsic evidence, including prior inconsistent statements and evidence contradicting the witness’ testimony, is admissible when offered solely to attack the credibility of a witness unless the court determines that the probative value of |7the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice.
La. C.E. art. 608 provides in pertinent part:
A. Reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of general reputation only, but subject to these limitations:
(1) The evidence may refer only to character for truthfulness or untruthfulness.
(2) A foundation must first be established that the character witness is familiar with the reputation of the witness whose credibility is in issue. The character witness shall not express his personal opinion as to the character of the witness whose credibility is in issue.
(3) Inquiry into specific acts on direct examination while qualifying the character witness or otherwise is prohibited.
B. Particular acts, vices, or courses of conduct. Particular acts, vices, or courses of conduct of a witness may not be inquired into or proved by extrinsic evidence for the purpose of attacking his character for truthfulness, other than conviction of crime as provided in Articles 609 and 609.1 or as constitutionally required.
Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and, when the ruling is one admitting evidence, a timely objection or motion to admonish the jury to limit or disre-' gard appears of record, stating the specific ground of objection. La. C.E. art. 103.
Admissibility of evidence is at the trial court’s discretion, which will not be disturbed on appeal absent a showing of abuse of discretion. Indeed, a trial judge has much discretion to regulate the evidence a jury hears. A reviewing court is prohibited from reversing a harmless error. Beaucoudray v. Walsh, 2007-0818 (La.App. 4th Cir.3/12/09), 9 So.3d 916, writ denied, 2009-0832 (La.5/29/09), 9 So.3d 168. See also Williams v. Bd. of Sup’rs of Univ. of La. Sys., 48,763 (La.App.2d Cir.2/26/14), 135 So.3d 804, writ denied, 2014-0666 (La.5/2/14), 138 So.3d 1249. On appeal, the reviewing court is required to consider whether the complained-of ruling was erroneous and whether the error affected a substantial right of the complaining party. If a party’s substantial right was not affected by an evidentiary ruling, a reversal is not warranted. The determination is whether the error, when compared to the record in its totality, had a substantial effect on the outcome of the case, and it is the complainant’s burden to so prove. Politz v. Politz, 49,242 (La.App.2d Cir.9/10/14), 149 So.3d 805. See also Hays v. Christus Schumpert N. La., 46,408 (La.App.2d Cir.9/21/11), 72 So.3d 955.
Failure to invoke a rule of evidence constitutes a waiver of the corresponding objection, and the aggrieved party subsequently on appeal may not complain of the inadmissibility of the evi *622 dence. Landmark Sav. Bank v. Greenwald, 582 So.2d 943 (La.App. 2d Cir.1991). To preserve an evidentiary issue for appellate review, it is essential that the complaining party enter a contemporaneous objection to the evidence or testimony and state the reasons for the objection. Failure to make a contemporaneous objection •to the admission of the evidence waives the right to contest it on appeal. See Key v. Monroe City Sch. Bd., 45,096 (La.App.2d Cir.3/10/10), 32 So.3d 1144; Wilson v. State ex rel. Dep’t of Transp. & Dev., 2011-0007 (La.App. 1st Cir.8/25/11), 77 So.3d 34, writ denied, 2011-2083 (La.11/18/11), 75 So.3d 467.
|9Discussion
Pratt argues that La. C.E. art. 608 prohibits the admission of evidence concerning particular past acts to impeach the credibility of a witness; La. C.E. art. 410 prohibits the use of nolo contendere pleas in criminal cases from being used in civil cases to impeach the credibility of a witness; and La. C.E. art. 403 prohibits the admission of evidence whose probative value is outweighed by its prejudicial effect.
In this case, the trial court carefully considered whether information concerning the suspension of Dr. Holt’s license would be admissible at trial. The trial court found that it was relevant where the suspension arose from overtreatment of patients and an issue in this case was the degree and cost of treatment rendered to the plaintiff. In essence, the information was not offered as to general reputation, but to provide relevant information on the credentials of an expert witness. Therefore, the trial court found that the evidence was admissible at trial. On appeal, Pratt argues that the trial court erred in this determination.[4]
This case does not present a simple question of whether the trial court’s ruling on the motion in limine on this issue was correct. Surprisingly, after extensively arguing that the evidence was not admissible, ImPratt’s counsel presented the evidence to the jury himself. When Pratt’s counsel called Dr. Holt to testify, among the first questions asked was whether Dr. Holt’s chiropractic license had ever been retroactively suspended for any reason. Dr. Holt responded that, early in his career, Medicaid thought his record keeping .was not acceptable and that the LSBCE ultimately decided to retroactively suspend his license. After he complied with the Board’s expectations, the complaint was dismissed. His license has remained current since that time.
Pratt’s attorney also questioned Dr. Holt about a letter recently obtained from the office of the Louisiana Attorney General. The letter outlined the nature of the complaint against Dr. Holt received by the LSBCE in 1997. It specified that a consent agreement was approved by the *623 LSBCE which avoided further administrative and judicial proceedings and the Board agreed to dismiss the complaint.
Dr. Holt was also asked about his suspension on cross-examination by the defense. He explained that the dispute arose from a misunderstanding of the way chiropractors treat patients and that, as a result of the dispute, he had learned to better document his work. Culpepper was allowed to introduce into the record, without objection by Pratt, the answer given by Dr. Holt in a deposition in another case where he said the reason for the suspension was overtreatment of patients.
Although prior to trial Pratt strenuously objected to the admissibility of evidence regarding Dr. Holt’s dispute with the LSBCE, it was the plaintiff himself who presented the information to the jury. Perhaps this |nwas a strategy decision on the part of Pratt’s counsel to attenuate the impact of the information. However, in choosing to place the information before the jury, Pratt opened the door regarding the issue and waived any objection he had to its admission. Having done so, he cannot now, on appeal, object to its admission. Further, because Pratt introduced testimony and evidence regarding the LSBCE proceedings, the defendants were entitled to cross-examine him regarding the issue. See La. C.E. art. 611(B). In any event, the trial court did not err in its ruling that the evidence would be admissible due to its relevance to the matters at issue in this case. Pratt’s arguments on this issue are without merit.
II. PRIOR ACCIDENTS
Pratt contends that the trial court erred in “spontaneously” allowing documentation and testimony concerning prior injury claims after the court had previously ruled they were not admissible. In February 2012, Pratt filed a motion in limine seeking to exclude numerous items of evidence, including any statement or reference by the defendants or witnesses about prior health conditions of the plaintiff not related to the present accident. He also sought to prohibit the defendants from mentioning statements, pleadings, depositions, requests for admission, or declarations by the plaintiff from other lawsuits or legal proceedings not connected with the instant case. A hearing was held on the motion in April 2012. At the hearing, Pratt’s counsel clarified he was seeking to exclude any discussion of prior injuries or conditions not related to the subject matter at hand. He noted that this case concerned neck and back injuries and sought to exclude | ^evidence of irrelevant conditions such as high blood pressure or diabetes. Pratt’s counsel further argued that prior claims are inadmissible unless the defendants urged fraud by pleading it as an affirmative defense. He contended that the admission of relevant evidence is governed by balancing the probative value against prejudicial effect. Pratt’s counsel also commented on the record that he did not know of the existence of any other claims, except for a 2003 accident.
The trial court found that evidence of prior health conditions related to accidents in November 2003 and the present accident were admissible. The trial court granted the motion in limine as to other incidents and injuries, finding those matters were not admissible. However, the trial court granted the defendants leave of court to reurge if something came up later that had connexity with this case. Notably, as to other “statements, pleadings, depositions, requests for admission, or declarations by the plaintiff from other lawsuits or legal proceedings,” the trial court found those to be admissible.
Pratt claims that at trial, the court “spontaneously” reversed itself and al *624 lowed the evidence of other claims. He asserts that he was not prepared to discuss the evidence and the defendants used the evidence to argue that Pratt was unreliable and untruthful. According to Pratt, the trial court’s sudden reversal tainted the fact finding process and prevented him from being able to explain that those prior injuries were not related to the injuries incurred in the present case and that he was.the victim of “ambush litigation.”
1 iSLegal Principles
The law pertaining to attacking the credibility of a witness, contained in La. C.E. art. 607, is set forth above.
Evidence of prior injury and claims is admissible insofar as it bears on any issue before the court, including credibility. Brown v. Diamond Shamrock, Inc., 95-1172 (La.App. 3d Cir.3/20/96), 671 So.2d 1049. See also Bradley v. Morton Thiokol, Inc., 27,411 (La.App.2d Cir.9/29/95), 661 So.2d 691; Munch v. Backer, 2010-1544 (La.App. 4th Cir.3/23/11), 63 So.3d 181; Juneau v. Strawmyer, 94-0903 (La.App. 4th Cir.12/15/94), 647 So.2d 1294; Arnold v. Dufrene, 01-1179 (La.App. 5th Cir.3/13/02), 815 So.2d 136.
Discussion
The record shows that during direct examination, Pratt’s attorney asked him if, “prior to this collision at any other time in your life have you been involved in any other collision.” Pratt stated that he rear-ended someone in 2009, but he was not hurt in that accident. Notably, the 2009 accident was not mentioned during the argument on the motion in limine in 2012. Pratt then stated that he was injured in the accident in 2003, but had fully recovered from those injuries. He said, under oath, that he was not involved or injured in any other accidents.
On cross-examination, defense counsel asked Pratt about the accident in 2009 and Pratt said that he was not injured. He was then asked, “You’ve not been in any other automobile accidents other than the 2003, 2009 and this accident?” Pratt replied that he had not. He was asked again and |14denied being involved in any other accidents. Pratt said he was not sure if he told his treating physicians about the accidents in 2003 and 2009.
Defense counsel offered a portion of Pratt’s employment records for impeachment purposes which showed that he had been involved in an auto accident in 1998.[5] Pratt said he did not remember the accident.
Defense counsel also introduced employment records showing that Pratt was involved in an auto accident in 2004. Pratt’s attorney did not object to admission of that evidence. Pratt said he did not remember the 2004 accident, but did not deny that it occurred. He was then asked about an accident in 1996, which he stated he did recall.
After all of this testimony was adduced on direct and cross-examination, Pratt’s attorney then lodged an objection, citing the ruling on the motion in limine, which limited discussion to only the present accident and the accident in 2003. Defense counsel stated that Pratt’s attorney had the employment records which showed that prior accidents had occurred, a fact denied by the plaintiff on direct examination. The defendants maintained that this information could be used to impeach Pratt. The trial court agreed.
*625 The motion in limine, which limited the evidence to the accident in 2003 and the present accident, was aimed at excluding irrelevant evidence concerning Pratt’s pri- or injuries and medical condition. Here, the evidence was presented to impeach Pratt’s credibility after he denied being involved 11sin other auto accidents. Pursuant to discovery, Pratt’s attorney had access to his client’s employment records. These records were listed by the defendants in the pretrial statement as an exhibit to be used at trial. Pratt has no basis for claiming he was surprised or “ambushed” by the information regarding the prior accidents.
On direct examination, Pratt’s attorney did not limit the scope of his question when he asked the plaintiff, “prior to this collision at any other time in your life have you been involved in any other collision?” Pratt stated that he had been involved in an accident in 2009, which was not covered by the motion in limine. This opened the door to evidence regarding prior accidents. Further, no objection was lodged until most of the information had already been elicited.
The trial court correctly found that, even considering the prior ruling on the motion in limine, the evidence could properly be used for impeachment. The fact that Pratt had been involved in other accidents, did not tell his treating physicians about them, and did not disclose them in discovery responses certainly involved the issue of his credibility. Here, Pratt himself brought up an accident that was not covered by the motion in limine and then stated that he was not involved in any other accidents. Under La. C.E. art. 607, defense counsel was entitled to offer proof of other auto accidents to attack Pratt’s credibility. As stated in Juneau v. Strawmyer, supra, “no one should be allowed to testify untruthfully in a court of law and then secure protection from exposure by claiming that evidence exposing his lie is more prejudicial than probative.” Based upon lujthe facts presented here, the trial court did not err in allowing the evidence of prior accidents to be used for impeachment purposes.
III. EXPERT WITNESS
Pratt asserts that the trial court erred in its application of the Daubert[6] requirements and La. C.E. art. 702, concerning the admissibility of expert opinion testimony. He claims that Kelley Adam-son, the defendants’ expert in accident reconstruction, biomechanics, and occupant kinematics, was not qualified to testify regarding medical causation of Pratt’s injuries. He also argued that Adamson’s opinions were unreliable and irrelevant because liability is not at issue.
Legal Principles
La. C.E. art. 702 provides:
A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(1) The expert’s scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(2) The testimony is based on sufficient facts or data;
(3) The testimony is the product of reliable principles and methods; and
(4) The expert has reliably applied the principles and methods to the facts of the case.
*626 Before an expert’s testimony is admitted, the trial court is required to perform a “gatekeeping” function to “ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.” Daubert v. Merrell Dow Pharm., Inc., supra; Abraham v. Richland Parish Hosp. Serv. Dist. 1-B, 39,841 (La.App.2d Cir.2/8/05), 894 So.2d 1229, writ denied, 2005-0450 (La.4/22/05), 899 So.2d 571.
This “gatekeeping” obligation applies not only to “scientific” testimony, but to all expert testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); Abraham v. Richland Parish Hosp. Serv. Dist. 1-B, supra. The Daubert nonexclusive list of factors includes: (1) the “testability” of the scientific theory or technique; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the methodology is generally accepted in the scientific community. Daubert was adopted in Louisiana in State v. Foret, 628 So.2d 1116 (La.1993).
In Cheairs v. State ex rel. Dep’t of Transp. & Dev., 2003-0680 (La.12/3/03), 861 So.2d 536, the Louisiana Supreme Court further specified that admission of expert testimony is proper only if all three of the following things are true: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. Abraham v. Richland Parish Hosp. Serv. Dist. 1-B, supra.
18Experience alone is normally sufficient to qualify a witness as an expert, and the fact that a witness does not have a college degree does not disqualify him from testifying. Cheairs v. State ex rel. Dep’t of Transp. & Dev., supra; Manchack v. Willamette Industries, Inc., 621 So.2d 649 (La.App. 2d Cir.1993), writ denied, 629 So.2d 1170 (La.1993); Godchaux v. Peerless Ins. Co., 2013-1083 (La.App. 3d Cir.6/4/14), 140 So.3d 817, writ denied, 2014-1411 (La.10/3/14), 149 So.3d 801.
Discussion
Pratt sought to use the expert testimony of Dr. David J. Barczyk, a Lafayette chiropractor and expert in biomechanics, to show that the impact of the collision caused the plaintiffs injuries. To rebut Dr. Barczyk’s opinions, the defendants planned to present the testimony of Adam-son, a civil engineer, who was offered as an expert in accident reconstruction, biome-chanics, and occupant kinematics. Pratt filed a motion in limine to exclude the testimony of Adamson at trial, arguing that, under Daubert, supra, and La. C.E. art. 702, Adamson was not qualified to give an expert opinion in the fields of medicine or biomechanical engineering. The motion was denied in open court on June 25, 2013, and a judgment was signed in July 2013.[7] On February 10, 2014, the day trial began, Pratt reurged his motion in limine to exclude the testimony of Adamson. The trial court concluded that the motion had been previously filed and nothing had 119changed since the motion was denied. The trial *627 court also questioned the timeliness of the motion and rejected it.[8]
Interestingly, after arguing strenuously that Adamson should not be allowed to testify at trial, Pratt’s counsel called him in his case-in-chief as a “hostile ■witness.” Adamson testified that he was hired by the defendants to reconstruct the accident, to look at the acceleration forces and, using research, to see what the probability of long-term injuries was in this case.
Pratt’s attorney elicited Adamson’s qualifications. He had bachelor’s and master’s degrees in civil engineering and had done highway, roadside, and safety research. He is also a structural engineer. He had learned about biomechanics and kinematics, which is the study of how humans move within vehicles. He attended a seminar studying the effect of low-impact collisions. He was questioned at length by Pratt’s attorney about his expert witness report and his opinions in this case. Pursuant to inquiry by Pratt’s attorney, Adamson was questioned as to whether he knew how Pratt’s body moved inside the vehicle when he was rear-ended by Cul-pepper. He stated that he knew generally, but not specifically. He stated that the body moves backward first. After Pratt’s attorney finished this questioning, he then laiPlayed for the jury the video deposition of Dr. Barczyk in which he disagreed with Adamson’s opinions.
When Adamson was later called to testify on behalf of the defendants, his qualifications were again presented. He stated that he is a licensed professional civil engineer, has been accepted in courts as an expert in accident reconstruction, biome-chanics, and occupant kinematics, and has BO years’ experience in these fields. Adamson acknowledged that he was not a neurosurgeon, chiropractor, or nurse practitioner, and has no training in the diagnosis and treatment of spinal injuries. He stated that he did not give a medical opinion in this case.
Pratt objected to Adamson’s qualifications in the fields of biomechanics and occupant kinematics.[9] The trial court overruled the objection and allowed Adam-son to testify as an expert in all three areas.
Adamson was asked by the defendants whether, based on his investigation, experience and tests, that Pratt was “more likely than not uninjured as a result of the bump with Mr. Culpepper.” Pratt objected that Adamson was not medically qualified to speak to Pratt’s injuries. The trial court overruled the objection. Adamson *628 stated that, more likely than not, Pratt was uninjured in this accident.
Adamson testified that the rear bumper of Pratt’s vehicle was designed to absorb an impact below 2⅜ miles per hour. In this case, there was no damage to the rear bumper absorber. Adamson stated that, because the rear bumper absorber was not damaged, the speed at the time of impact Is,was two miles per hour, and more likely than not, Pratt was not hurt. Adamson commented on a conclusion drawn by Pratt’s expert, Dr. Barczyk, that if there is less damage to a vehicle, there is an increased potential for the occupant to be injured. Adamson testified that Dr. Barc-zyk’s conclusion was physically impossible and defied known scientific laws.
Adamson was again cross-examined by Pratt’s attorney and stated that his testimony regarding the probability of injury to Pratt in this low-impact accident was not the expression of a medical opinion, but was based on statistical analysis. Adamson clarified that he was not testifying that Pratt did not sustain injuries in this accident, but was stating that the statistical analysis indicates that, at these collision levels, force levels, and acceleration levels, the probability of injury is low. Adamson was questioned about several studies that showed that property damage is not a valid indicator of acute injury risk or of symptom duration. He stated that he disagreed with those studies. Adamson acknowledged that he is not able to diagnose injuries and his testimony dealt with the probability of injury, not whether Pratt was, in fact, injured in this accident.
Against this backdrop, Pratt now complains on appeal about Adamson’s testimony. Pratt’s actions in calling the defense expert, Adamson, as a witness, questioning him in detail, then calling his own expert, Dr. Barczyk, to refute Adamson’s opinion and then arguing on appeal that Adamson should not have been allowed to testify, is somewhat disingenuous. However, we will endeavor to address Pratt’s arguments.
122Pratt argues on appeal that the “rising consensus” in courts across the country is that engineering experts are prohibited from providing medical causation opinions. Pratt argues this court has stated that force-of-impact testimony cannot be used to prove the extent of injuries, citing Seegers v. State Farm Mut. Auto. Ins. Co., 188 So.2d 166 (La.App. 2d Cir.1966). He also cites Godchaux v. Peerless Ins. Co., supra. In that case, which did not involve a rear-end collision and was not decided until after this case was tried, the third circuit adopted the reasoning in Seegers to reject force-of-impact testimony to prove causation. Therefore, he argues the trial court erred in allowing Adamson’s force-of-impact testimony in this case.
However, Pratt fails to recognize that, in numerous cases, this court has clarified its statements in Seegers. In Seegers, an accident in 1962 involved a slight rear-end collision which threw Mrs. Seegers, the guest passenger, who was recuperating from hernia surgery, into the armrest of the car, causing mild cervical and dorsal sprains to the neck and back. She also experienced some abdominal discomfort in the operative area. The medical experts concurred that Mrs. Seegers suffered mild injuries , in the accident. The defendants argued that the force of the impact was so slight that it could not have caused injuries of the nature and extent complained of by Mrs. Seegers. This court stated that, “While it is indisputably true that the impact was slight, we think it would be a dangerous precedent to attempt to measure the degree of injuries in direct proportion to the force of a collision.”
| a-jThis court later clarified its position, stating that, “This court has avoided the precedent of attempting to measure the *629 degree of injury in direct proportion to the force of a collision. Where medical experts and lay witnesses establish that a plaintiff sustained some injuries, the minimal force of the collision causing the injuries is of no material importance.” Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981); Simpson v. Caddo Parish Sch. Bd., 540 So.2d 997 (La.App. 2d Cir.1989); Starnes v. Caddo Parish Sch. Bd., 598 So.2d 472 (La.App. 2d Cir.1992). In West v. Williams, 30,842 (La.App.2d Cir.8/19/98), 717 So.2d 1224, we recognized the principle that personal injuries are not always directly proportionate to the force of a collision between two vehicles, citing Seegers.
In Aaron v. Bolds, 566 So.2d 195 (La.App. 2d Cir.1990), this court observed that, while the degree of injuries in vehicle accident cases may not be measured in direct proportion to the force of a collision, neither, logically, should a court decline to consider and evaluate all of the evidence. See also Bass v. Allstate Ins. Co., 32,652 (La.App.2d Cir.1/26/00), 750 So.2d 460.
In Harper v. Garcia, 32,142 (La.App.2d Cir.8/18/99), 739 So.2d 996, the defendants presented testimony from an expert in accident reconstruction and mechanical engineering that the force of a collision was relatively minor and was a factor in determining the causal connection between the accident and the plaintiffs injuries. The plaintiff appealed, seeking an increase in damages, arguing that the trial court erred in relying |24on force-of-impact testimony in determining causation and extent of injuries. This court farther clarified the holding in Seegers:
The language cited by plaintiffs regarding this court’s historical avoidance of the precedent of attempting to measure an injury in direct proportion to the force of a collision was utilized specifically in instances where appellants sought to have this court discredit or attach less weight to medical and lay testimony in favor of the argument that the impact of the subject accident was so slight it could not have caused the complained of injuries. See Simpson v. Caddo Parish School Board, [supra ]; Boykin v. Washington, [supra]; Seegers v. State Farm Mutual Automobile Insurance Co., [supra ]. The original language was most recently clarified in Starnes v. Caddo Parish School Board, [supra], where this court succinctly refused to use the force of impact “as the determining factor in assessing the severity of the plaintiffs injuries.” We read this jurisprudence to support consideration of force-of-impact testimony as a relevant factor in determining causation or extent of injuries, although not as the sole or determinative element. [Emphasis supplied.]
Thereafter, this court has considered force-of-impact testimony as a relevant factor, but not the determining factor, in numerous cases. See Currie v. Myers, 32,633 (La.App.2d Cir.1/26/00), 750 So.2d 388, writ not cons., 2000-0665 (La.3/17/00), 756 So.2d 316; Merrells v. State Farm Mut. Auto. Ins. Co., 33,404 (La.App.2d Cir.6/21/00), 764 So.2d 1182; James v. Robinson, 38,774 (La.App.2d Cir.8/18/04), 880 So.2d 975. See also Peters v. Williams, 40,403 (La.App.2d Cir.12/14/05), 917 So.2d 702 (plaintiff conceded that force-of-impact is a valid criterion in determining causation and extent of injuries). See and compare Hunt v. Long, 33,395 (La.App.2d Cir.6/21/00), 763 So.2d 811 (trial court instructed jury that force-of-impact was not relevant in determining damages and there was no objection to the instruction).
| In Fussell v. Roadrunner Towing & Recovery, Inc., 1999-0194 (La.App. 1st Cir.3/31/00), 765 So.2d 373, writ denied, *630 2000-1264 (La.6/23/00), 765 So.2d 1042, the first circuit observed that, if the medical and lay testimony is sufficient to prove that the collision caused some injuries, the minimal force of the impact that caused the injuries would seem irrelevant. As the force of impact in a collision lowers, and the seriousness of the injury rises, expert testimony becomes more relevant. An expert’s commentary on speed, rate of acceleration, force of impact, and the correlation to injuries suffered as exemplified in reliable published studies would become an integral part of the defense or plaintiffs case. A plaintiff or a defendant cannot be deprived of the right to offer a reasonable presentation of issues by the rigid, artificial application of a jurisprudentially created aid for the proof of causation. Each particular case must be reviewed on its own facts. Fussell v. Roadrunner Towing & Recovery, Inc., supra.
Pratt urges this court to follow the recently decided third circuit opinion in God-chaux v. Peerless Ins. Co., supra, and to completely reject the use of force-of-impact testimony in this case. In Godchaux, the third circuit rejected the use of the testimony of an “alleged” expert in biome-chanics and causation analysis on the issue of whether the accident caused the plaintiffs injuries because the methodology employed by the witness was unreliable. The third circuit then stated that, even if the methodology was reliable, the testimony would have been excluded because | ¾6⅛ the third circuit, force-of-impact testimony cannot be used to prove causation, citing the language from this court in Seegers.[10]
Similarly in Davis v. Martel, 2000-1727 (La.App. 3d Cir.7/18/01), 790 So.2d 767, writ denied, 2001-2399 (La.11/21/01), 801 So.2d 1087, the third circuit reasoned that, where there was no indication by the medical and lay witnesses that the plaintiff feigned her injuries following the accident, force-of-impact evidence could not be considered.
We note that the approach of the third circuit on the issue of use of force-of-impact testimony has been somewhat inconsistent. In Fletcher v. Langley, 631 So.2d 693 (La.App. 3d Cir.2/2/94), writ denied, 635 So.2d 1139 (La.1994), the court observed that the minimal or minor nature of an automobile accident is a fact which may be considered by the jury, citing prior third circuit jurisprudence. See also Mouton v. Old Republic Ins. Co., 2011-458 (La.App. 3d Cir.10/5/11), 74 So.3d 1245, writ denied, 2011-2490 (La.2/3/12), 79 So.3d 1028, holding that the finder of fact may consider the minimal nature of the accident in determining damages.
In Brown v. Trinity Universal Ins. Co., 2001-1405 (La.App. 3d Cir.4/3/02), 814 So.2d 747, writ denied, 2002-1689 (La.10/14/02), 827 So.2d 422, the third circuit held that, while the force of a collision may be considered in determining whether a person was injured in an accident and the extent of any injuries sustained, it should not be the only factor considered when making such a determination.
|27In this case, the record shows that Adamson was qualified to testify as an expert in his specified fields of accident reconstruction, biomechanics, and occupant kinematics. As stated by Adamson numerous times during his testimony, he was not offering a medical opinion as to whether Pratt was injured. He was simply offering scientific and statistical analysis as to the probability of anyone being injured *631 in this accident. This expert testimony was admissible under the more recent holdings of this court regarding the use of force-of-impact testimony and evidence, and the trial court did not abuse its discretion in its rulings. Further, Adamson’s testimony was not the determining factor as to whether Pratt was or was not injured in this accident. The jury had before it all the evidence and testimony presented by Pratt, including that of his treating physicians and expert, as well as the rebuttal and impeachment evidence and testimony presented by the defendants. As stated in Aaron v. Bolds, supra, a court should not decline to consider and evaluate all of the evidence. A plaintiff or defendant cannot be deprived of the right to offer a reasonable presentation of issues by the rigid, artificial application of a jurisprudentially created aid for the proof of causation. Fussell v. Roadrunner Towing & Recovery, Inc., supra. In this matter, the lower court did not abuse its discretion in ruling that Adamson was qualified to testify and allowing his testimony. Further, Pratt again opened the door by presenting the case in the manner described above.
Pratt claimed that Adamson’s opinions were unreliable as a matter of fact, medicine, and science. He contended that Adamson’s opinion was based on “snippets” of information. Adamson was extensively questioned |asabout materials reviewed for this case, including photographs of the vehicles, repair' reports showing there was no damage to the absorbing core of Pratt’s rear bumper, police reports, maps of the intersection, statistics on each vehicle as to size and weight, depositions of the parties and Dr. Barczyk, and peer-reviewed papers on car crashes. Adamson stated that he obtained the same model vehicles involved in the accident in this case and lined them up to see how the bumpers fit. Adamson testified that he could determine the speed of impact in this case from the degree of damage to Pratt’s bumper. Due to the lack of damage to Pratt’s rear bumper, Adamson estimated the speed of the impact at two miles per hour and agreed that some energy would be transmitted to the occupants of the vehicle.
The record shows that the materials and methodology used by Adamson were reliable and the trial court did not err in allowing him to testify.
Pratt next argues that Adamson’s testimony was irrelevant because liability was not an issue in this matter. Adam-son’s testimony was relevant to rebut the expert opinion offered by Dr. Barczyk, who was admitted as an expert in biome-chanics. Dr. Barczyk did not examine the vehicles involved in this case. In his testimony, he spoke about Culpepper driving a Toyota, when in fact he was driving a Nissan. Dr. Barczyk dismissed this discrepancy and stated that the vehicles were similar. Dr. Barczyk stated that it is not possible to look at the bumpers of vehicles to determine the speed of the crash. Dr. Barczyk also stated that when there is no car crush, more energy is transmitted to the occupants of the vehicle.
la/The extent of Pratt’s injuries and the likelihood that the light impact between the vehicles caused them was an issue in this case. Pratt introduced the expert opinion of Dr. Barczyk to show that the speed of impact could not be determined and the slighter the impact, the more likely it is that the occupants of the vehicle will be injured. Adamson’s testimony, based upon his specified areas of expertise, was aimed specifically at refuting Dr. Barczyk’s opinion. Therefore, Adamson’s testimony was relevant. The trial court did not err in allowing the testimony.[11]
*632 CONCLUSION
For the reasons stated above, we affirm the judgment in favor of the defendants, Brett 0. Culpepper, State Farm Mutual Automobile Insurance Company, and Oakley Medical LLC, dismissing the claims of the plaintiff, Michael W. Pratt. Costs in this court are assessed to the plaintiff.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, DREW, LOLLEY and GARRETT, JJ.
Rehearing denied.

. Pratt initially added Premier Medical LLC as a defendant; that entity was eventually dismissed. Oakley Medical LLC, Culpepper’s company, was later added as a defendant.

. In closing arguments to the jury, Pratt’s counsel asked the jurors to award $75,000 for past physical pain and suffering; $50,000 for past mental pain and suffering; $46,095.12 *619 for past medical expenses; and $100,000 for loss of enjoyment of life.

. The matter was tried February 10-17, 2014.

. Pratt cites the case of Beaucoudray v. Walsh, supra, in support of its argument that information regarding professional discipline is not admissible to attack the credibility of an expert witness. The facts of Beaucoudray are distinguishable. In that case, a medical expert was called to testify in a medical malpractice case on behalf of the defendants regarding the treatment of a juvenile who underwent orthopedic surgery. The defendants obtained a motion in limine prohibiting plaintiffs from introducing evidence regarding disciplinary proceedings against its expert in another state stemming from a consensual sexual relationship with a patient. The trial court found that the evidence of the expert’s disciplinary problems was relevant under La. C.E. art. 401, but the probative value was substantially outweighed by the danger of unfair prejudice. Therefore the evidence was excluded. See also Glapion v. Bergeaux, 2001-1865 (La.App. 4th Cir. 12/11/02), 834 So.2d 1141. In the present case, the matter forming the substance of the disciplinary proceeding was directly relevant to issues presented for trial.

. Pratt's "employment records and/or records of any matter or kind pertaining to his work or income history" were listed as an exhibit by the defendants in the pretrial statement. Pratt’s attorney had been provided with copies of these documents.

. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. The trial court denied the defendants’ motion in limine to exclude Dr. Barczyk’s testimony.

. Pratt maintains in his brief that he was deprived of his right to have an evidentiary hearing on his "Daubert ” issue when the judge denied his request to reurge his motion the morning trial began. This argument is misleading. The record shows that the judge who initially presided over this matter conducted numerous hearings in connection with the litany of motions filed by both sides. After Pratt and the defendants retained their respective experts, disputes arose over timeliness, reports, discovery, etc. The trial court ordered that written reports be exchanged and ordered that any Daubert motions be filed by a certain deadline. Both sides later filed their motions. A hearing was set for June 25, 2013, and the parties presented extensive arguments both in brief and in open court. The trial court had the benefit of the briefs, the experts' reports, the curricula vitae, discovery, and other documentation. None of the parties lodged any objection to the matter being handled in this manner. The trial court ruled that both experts could testify. Pratt’s attempt to reurge the matter on the morning of trial was untimely and in violation of the scheduling orders that had been issued in this case. The attempt was also untimely under La. C.C.P. art. 1425.

. During the trial, Pratt did not object to Adamson's qualifications in the area of accident reconstruction.

. We note that the accident in Godchaux involved the defendant losing control of his vehicle on 1-49, flipping, and crossing the median toward southbound traffic. Pieces of the headache rack on the defendant’s truck flew off and hit the vehicle driven by the plaintiff, causing him to be struck in the head and neck with broken glass.

. In his fourth assignment of error, Pratt asserts that, if the evidence he claims is inadmissible is excluded, the jury was manifestly erroneous in finding that the accident did not cause his physical injury and damage. Because we find that the evidence complained of by Pratt was properly admitted, we affirm the jury verdict and trial court judgment. Therefore, we do not reach consideration of this assignment of error.